**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Ricky TEJEDA, Appellant.**

Superior Court of Pennsylvania.

Submitted June 2, 2003.
Filed Oct. 9, 2003.

Erik J. Conrad, Allentown, for appellant.

James B. Martin, Asst. Dist. Atty., Allentown, for Com., appellee.

BEFORE: MUSMANNO, BOWES and CAVANAUGH, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Ricky Tejeda ("Tejeda") appeals *nunc pro tunc* from the judgment of sentence imposed after his conviction of attempted criminal homicide, aggravated assault, simple assault, and reckless endangering of another.[1] We affirm.

---

1. 18 Pa.C.S.A. §§ 2501; 2702(a)(1),(4); 2701(a)(1); and 2705, respectively.

¶ 2 Tejeda raises only one issue on appeal:

> Did the trial judge commit an error of law when she failed to grant a mistrial upon motion of defense counsel and/or for reason of manifest[ ] necessity where [Tejeda's] flagrant misbehavior was so prejudicial that it would be impossible for the finders of fact to arrive at an impartial verdict?

Brief for Appellant, at 4. Tejeda argues that the trial court should have granted his Motion for a mistrial, which arose out of his own intentional conduct. We disagree.

¶ 3 The trial court aptly summarized the facts as follows.

> On November 7, 2000, at approximately 10:30 or 11:00 in the morning, the victim, Luis Villatoro, got into a vehicle driven by [Tejeda], at a grocery store on the corner of Fourth and Turner Streets, Allentown, Pennsylvania. [Tejeda] asked Mr. Villatoro if he would like to go with him to the house of a female acquaintance in Fogelsville, Pennsylvania. They then left the area in a white Geo Metro driven by [Tejeda].
>
> After driving into the countryside, approximately 10 miles from their initial place of encounter, [Tejeda] pulled over next to the barn and told Mr. Villatoro that it was a place to "see fish." ... He then asked Mr. Villatoro to go into the barn to buy some fish. As they walked toward the barn, without any warning, [Tejeda] pulled out a gun and shot Mr. Villatoro twice, once in the face, and once in the back of the head.
>
> [Tejeda] fled the scene in a white Geo Metro. Amazingly, Mr. Villatoro man-

aged to walk to the roadway and obtain help from a passing motorist. The motorist called 911, and law enforcement and medical assistance arrived. The victim was taken by ambulance to a hospital.

. . .

> Mr. Villatoro spoke with police at the hospital that day and the next. During these meetings, he provided a description of the shooter and described the shooter's vehicle as a small white Chevrolet with a North Carolina license plate. On November 10, 2000, Mr. Villatoro went to [the] Allentown Police headquarters and, after viewing several books of photographs, identified [Tejeda] as the shooter .... Six days later, ... [Tejeda] was taken into custody when the New Jersey State Police discovered [an] outstanding warrant [for his arrest]. [Tejeda] was later extradited to Pennsylvania to stand trial ....

Trial Court Opinion, 10/1/02, at 3–4.

¶ 4 Tejeda was tried before a jury on August 13–15, 2001. At the outset of the proceedings, Tejeda made two requests: (1) that he be allowed to sit at the end of the counsel table with his back to the jury (placing him within arms' reach of the jury),[2] and (2) that the safety belt,[3] placed around his waist by the deputy sheriff be removed. The trial court granted Tejeda's first request, to sit with his back to the jury, though it noted in its Opinion that the request seemed unusual. Trial Court Opinion, 10/1/02, at 10. However, the trial court deferred to the judgment of the sheriff's office regarding the use of the

---

**2.** Tejeda made this request off the record. Trial Court Opinion, 10/1/02, at 10.

**3.** The record reflects that the safety belt in question was a belt worn around Tejeda's waist, under his clothing, that carried an elec-

tric charge of 50,000 volts. A deputy in the courtroom could operate the belt by remote control. The safety belt allowed the deputy to administer an electric shock if Tejeda disrupted the proceedings.

safety belt. The deputy chose not to remove the safety belt.

¶ 5 At the close of testimony but immediately before the jury charge, Tejeda informed the trial court that he was dissatisfied with his counsel's representation. At that time, the trial judge sternly warned Tejeda that she would not tolerate any outbursts from him during her charge to the jury. Tejeda complied with the trial court's admonishments. However, as the jury stood to recess for deliberation, Tejeda threw water upon the jury. The trial transcript reflects the following:

> THE COURT: The record should reflect that the defendant has tossed a string or something at the jury; that the defendant is muttering in a loud and threatening voice; the defendant is being removed from the courtroom[,] as is the jury. . . . . Record should reflect that the material tossed at the jury was the contents of a paper cup of water, that Jurors No[s.] 2, 3, and 4 appear to have been showered.

> MR. NELTHROPP [(defense counsel)]: Your honor, I specifically saw him directed [(sic)] at two because two got the brunt of the water.

> THE COURT: [Juror number] two was drenched. . . .

> THE COURT: Record can reflect it's a three-ounce Dixie cup.

N.T., 8/15/00, at 513–14. Tejeda's counsel then moved for a mistrial, which the trial court denied. *Id.* at 516–17.

¶ 6 The jury returned to the courtroom for a cautionary instruction before deliberations. The trial court provided the following instruction:

> I don't want the jury to consider [Tejeda's] behavior toward you as something that needs your attention, either your retribution or your forgiveness,

okay. That would not be your function here.

My—I am going to be asking each of you whether or not, in light of [Tejeda's] actions, whether or not you believe that you can consider the evidence that was presented in court and on the—on the charges before you and whether or not you can proceed to deliberate and render a fair and just verdict on the charges against him.

Now, the question comes into play, well, what about his behavior? What box do you put that in? What label do you put on it? How do you consider it? And I would say this, [Tejeda] when this trial went on was presumed to be innocent of the charges against him. And even before—as you were standing to go out to deliberate, [Tejeda] was presumed to be innocent of the charges against him until your deliberations return a verdict otherwise.

As you sit here right now, [Tejeda] is presumed to be innocent of the charges against him. Your deliberations are the only thing that can change that. Throughout the course of a trial, you observe all the witnesses, and you observe [Tejeda], and you make judgments about people's character by what they show you.

So can you consider this as evidence of his character? Perhaps and perhaps not. But even a person of bad character or impulsive character might not have committed these acts and did not commit these acts unless you are convinced by the Commonwealth's evidence and the evidence presented by [Tejeda] that he did commit the acts.

And that would be the way I would suggest to you that you consider this. You are not required to ignore it. But you are required not to be prejudiced by it or to consider it as evidence of his

committing the crimes that he is charged with here and that we've been in trial on.

So you might conclude that he's a person of bad character, but that does not necessarily mean that he is a person who attempted homicide. Do you understand what I'm saying?

*Id.* at 521–23. The trial court then polled each juror individually to determine whether he or she could still render a fair and impartial verdict following Tejeda's outburst. Each jury member responded that he or she could render a fair and impartial verdict. *Id.* at 523–24. Despite this fact, Tejeda's counsel again moved for a mistrial. *Id.* at 524. The trial court denied the motion and dismissed the jurors to deliberate.

¶ 7 Tejeda was then returned to the courtroom. The trial court informed Tejeda that the jury had begun its deliberations, but provided Tejeda with an opportunity to waive his right to a jury trial and to have the trial court act as the finder of fact. Tejeda chose to accept the jury's verdict. *Id.* at 537. The jury ultimately returned a verdict against Tejeda on all counts. The trial court sentenced Tejeda to a prison term of twenty to forty years on October 15, 2001. Tejeda subsequently filed a Motion for reconsideration of sentence, which the trial court denied. No direct appeal was taken. Tejeda later filed a timely Petition pursuant to the Post Conviction Relief Act ("PCRA"),[4] after which the PCRA court granted him the right to file an appeal *nunc pro tunc.* This appeal followed.

¶ 8 A motion for a mistrial is within the discretion of the trial court. *Commonwealth v. Stafford,* 749 A.2d 489, 500 (Pa.Super.2000) (citations omitted). "[A] mistrial [upon motion of one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Commonwealth v. Lease,* 703 A.2d 506, 508 (Pa.Super.1997).[5] It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. *Id.* On appeal, our standard of review is whether the trial court abused that discretion. *Stafford,* 749 A.2d at 500.

¶ 9 An abuse of discretion is more than an error in judgment. *Commonwealth v. Griffin,* 804 A.2d 1, 7 (Pa.Super.2002). On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. *Id.*

When the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. . . . [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, [it was] charged with the duty imposed on the court below; it is necessary to go further and show an abuse of discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a

---

4. 42 Pa.C.S.A. §§ 9541–9546.

5. Tejeda suggests in his Statement of the issues that the appropriate standard is whether a manifest injustice occurred by the trial court's failure to grant his Motion for mistrial. This is an incorrect statement of the law. The manifest necessity standard is applicable

when determining whether double jeopardy attaches following a trial court's *sua sponte* declaration of mistrial. *Commonwealth v. Kelly,* 797 A.2d 925, 936 (Pa.Super.2002). Since the trial court did not *sua sponte* declare a mistrial, this standard is not applicable.

conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion....

*Commonwealth v. Garcia,* 443 Pa.Super. 414, 661 A.2d 1388, 1394–95 (1995) (quoting *Paden v. Baker Concrete Construction, Inc.,* 540 Pa. 409, 658 A.2d 341, 343 (1995) (citations and quotation marks omitted)).

¶ 10 Tejeda relies upon *Commonwealth v. Owens,* 299 Pa.Super. 1, 445 A.2d 117 (1982) to support his position that a mistrial should have been granted in this situation. This reliance is misplaced, as *Owens* does not stand for that proposition. Rather, the issue in *Owens* was whether the trial court's declaration of a mistrial prevented the Commonwealth from retrying the defendant; thus, *Owens* is inapplicable to the current case.[6]

■ ¶ 11 After a review of the record, we determine that the trial court did not commit an abuse of discretion in its denial of Tejeda's Motion for a mistrial. After weighing the options, the trial court issued an adequate curative instruction and then polled each juror to determine whether the incident affected his or her ability to render a fair and impartial verdict. All members of the jury responded that they would still be able to render a fair and impartial verdict despite Tejeda's actions. Upon hearing their responses and observing their demeanor, the trial judge concluded that the jury could render a fair and impartial verdict. *See Commonwealth v. Jacobs,* 556 Pa. 138, 727 A.2d 545, 548 (1999) (stating that "it is the trial judge who must interpret the answers and demeanor of all potential jurors to evaluate their ability and willingness to render a fair verdict"). During deliberations, the jury returned with questions concerning distinctions between the elements of various charges, which is evidence of thoughtful deliberations. N.T., 8/15/00, at 538. Moreover, the trial court provided Tejeda with the opportunity to waive his right to a jury trial if he was concerned about the jury's ability to remain impartial. Tejeda chose to allow the jury to continue its deliberations and return its verdict. We conclude that Tejeda received a fair and impartial trial, despite his own deliberate actions, and affirm the judgment of sentence on that basis. Because Tejeda deliberately and intentionally disrupted the proceedings, he should not profit from his actions. Consequently, we hold that the trial court did not abuse its discretion in refusing to grant Tejeda's Motion for mistrial.

¶ 12 Judgment of sentence affirmed.

¶ 13 CAVANAUGH, J., concurs in the result.

---

**6.** Further, the underlying facts of *Owens* are much more egregious than the current case. In that case, the defendant disrupted the trial proceedings out of the presence of the jury, continued his unruly behavior upon the jury's return, and further indicated that he would not cease. *Id.* at 120. At one point, the defendant even dared the trial judge to sentence him in contempt to one thousand years in prison in the presence of the jury. *Id.* at 118. With this type of behavior, the trial judge was not able to maintain control over her courtroom to continue the trial. Upon motion of defense counsel, the trial court granted a mistrial. *Id.*