J-S48039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID ALUM | |
| Appellant | No. 354 WDA 2015 |

Appeal from the Judgment of Sentence of February 12, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No.: CP-26-CR-0001659-2014

BEFORE: PANELLA, J., DONOHUE, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 20, 2015**

David Alum appeals his February 12, 2015 judgment of sentence. We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> The incident giving rise to this case occurred on April 27, 2014, at which time Detective Thomas Patton of the Fayette County Drug Task Force arranged with a confidential informant for a "controlled buy" of heroin. Detective Patton was working with other members of the Fayette County Drug Task Force, and there was a meeting among the officers to confirm where the controlled buy would occur. The confidential informant as well as his/her vehicle [were] thoroughly searched, and there [were] no money, drugs, contraband, or weapons in the vehicle or on the confidential informant's person. The confidential informant was provided $160.00 for the purpose of purchasing heroin from [Alum.] The confidential informant was under the constant observation of members of the Fayette County Drug Task Force, and Detective Patton observed [Alum] enter the car of the confidential informant. The confidential informant's vehicle was followed as it was driven just around the block, and [Alum] was

observed exiting the car. A search was conducted of the confidential informant and the vehicle immediately after the brief exchange with [Alum,] and Detective Patton took possession of two baggies of a suspected controlled substance from the confidential informant. An analysis of the substance was conducted by the Pennsylvania State Police Crime Lab, and the substance proved to be a mixture of heroin and cocaine. [Alum] was charged with delivery and possession, and the trial in the matter was held on February 5, 2015.

On the morning of trial, although [Alum] was provided street clothes at the Fayette County [Jail], [Alum] refused to change out of his [jail] jumpsuit, and he entered the courtroom for trial dressed in his [jail] jumpsuit. After the case was called on the record by the Assistant District Attorney, counsel for [Alum] requested a sidebar conference, at which time Attorney Shane Gannon requested a mistrial on behalf of [Alum], arguing that although [Alum] refused to change out of his [jail] clothing, the jury [was] prejudiced by having seen [Alum] in a [jail] jumpsuit. [The trial] court denied the motion for mistrial, and when the trial resumed after the lunch recess, [Alum] was then dressed in the clothes which he refused to wear the morning of trial.

Trial Court Opinion ("T.C.O."), 5/4/2015, at 2-3 (minor modifications to capitalization).

Following a February 5, 2015 jury trial, Alum was found guilty of two counts of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance ("PWID"),[1] and one count of possession of a controlled substance.[2] On February 12, 2015, Alum was sentenced to a period of not less than three nor more than ten years in a state correctional

_____

[1]   35 P.S. § 780-113(a)(30).

[2]   35 P.S. § 780-113(a)(16).

- 2 -

institution. On February 17, 2015, Alum filed a post-sentence motion for modification of his sentence, which the trial court denied on February 20, 2015. Alum thereafter filed a timely notice of appeal. The trial court directed Alum to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Alum timely complied. On May 4, 2015, the trial court issued its Pa.R.A.P. 1925(a) opinion. Alum raises two issues for our consideration:

> I. Did the trial court err in refusing to grant [Alum's] motion for a mistrial on the basis that [Alum] was present before the jury during jury selection and opening arguments while wearing a Fayette County issued [jail] uniform?
>
> II. Did the sentencing court abuse its discretion by deviating from the sentencing guidelines based solely upon [Alum's] prior record?

Brief for Alum at 7.

Alum's first issue involves his participation in jury selection and opening arguments while dressed in jail garb. On February 5, 2015, Alum appeared for trial in his striped jumpsuit. Notes of Testimony ("N.T."), 2/4/2015, at 5. Prior to jury selection, Alum asked for a continuance based upon his dress. When the trial court denied his request, Alum moved for a mistrial. After being denied, jury selection commenced. After opening statements, the judge dismissed the jury for lunch. While the jury was recessed, members of the jail staff testified that Alum could not wear his own street clothes to trial, because he only had shorts, which would reveal the leg brace that inmates are required to wear while in court. *Id.* at 27-28.

- 3 -

Instead, the jail staff offered Alum street clothing suitable for court. *Id.* at 29. Alum refused this clothing, stating that it was dirty and did not fit. *Id.* He then appeared for trial in his jail jumpsuit. After the short hearing concluded, Alum then changed his mind, stating that he wanted to change into the clothes that he had initially refused. *Id.* at 36-37. He appeared for the afternoon portion of trial in street clothes provided by the Fayette County Jail.

A motion for a mistrial is within the discretion of the trial court. *Commonwealth v. Stafford*, 749 A.2d 489, 500 (Pa. Super. 2000). On appeal, our standard of review is whether the trial court abused that discretion.

> When the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden . . . . [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, [it was] charged with the duty imposed on the court below; it is necessary to go further and show an abuse of discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion. . . .

*Commonwealth v. Tejeda*, 834 A.2d 619, 623-24 (Pa. Super. 2003) (brackets in original). "[A] mistrial [upon motion of one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Id.* at 623 (citation

omitted; brackets in original). "In making its determination [for a mistrial] the [trial] court must discern whether misconduct or prejudicial error actually occurred, and if so, . . . assess the degree of any resulting prejudice." *Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2012).

If a defendant is required to appear in front of a jury in a jail or prison uniform, courts will presume a violation of his or her right to a fair trial. *See Commonwealth v. Keeler*, 264 A.2d 407, 409 (Pa. Super. 1970). The prohibition of forcing an incarcerated defendant to attend his or her trial in identifiable prison or jail clothing is based primarily upon the impact that the "constant reminder of the accused's condition implicit in such distinctive, identifiable attire" might have upon the jury. *Estelle v. Williams*, 425 U.S. 501, 504-05 (1976); *see Commonwealth v. Moore*, 633 A.2d 1119, 1127 (Pa. 1993) (interpreting the concern over the constant reminder of the defendant's incarcerated status as the focal point of *Estelle*).

> In *Estelle*, the U.S. Supreme Court was presented with the potential effects of presenting an accused before a jury in "prison attire." The Court found that the defendant[']s appearance would be a constant reminder of the accused's condition that might have significant effect on the jury's feeling about the defendant, without serving any essential state policy. While the court upheld the conviction in *Estelle* on the basis that the defendant was not "compelled" to appear in jail attire, it noted that it would be error for a trial court to compel a defendant against his will to stand trial in prison attire, while at the same time recognizing that in some instances such error may be harmless.

*Id*. (footnote and emphasis omitted).

Given that it was Alum's intention for the jury to see him in his uniform, and not in the street clothes he was offered, the trial court could find no resulting prejudice to warrant a mistrial. Alum had "ample opportunity to obtain civilian clothing prior to trial," and he refused to wear the clothing offered to him. T.C.O. at 3. The record supports the trial court's conclusion that Alum consciously chose to appear in front of the jury in his jail uniform. He was in no way "compelled to appear in jail attire." Additionally, due to the brevity of his appearance in jail uniform, we have no reason to believe that the jury used Alum's initial dress in their decision. There was no "constant reminder" of Alum's incarceration, as his only appearance in the uniform was during jury selection and opening statements. Furthermore, the judge gave initial instructions to the jury explaining Alum's innocence during this time. Alum did not request a curative instruction, so the trial proceeded without further focus upon his initial dress.

Alum received a fair and impartial trial, despite his own deliberate actions. Because Alum deliberately chose to appear in his jail uniform, he cannot profit from his actions. Consequently, the trial court did not abuse its discretion in refusing to grant Alum's motion for mistrial.

Alum's second issue involves a challenge to the discretionary aspect of his sentence. Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse

- 6 -

of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Hoch***, 936 A.2d 515, 517-18 (Pa. Super. 2007) (citation omitted).

The right to challenge the discretionary aspects of sentencing is not absolute. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Id.*** (internal citations omitted).

Alum has complied with the first two parts of the test by filing a timely notice of appeal and preserving the issue in his post-sentence motion. Though Alum has failed to include a Pa.R.A.P. 2119(f) statement in his brief, the Commonwealth has not raised an objection to its absence. "[I]n the absence of any objection from the Commonwealth, we are empowered to review the claims that otherwise fail to comply with Rule 2119(f)." ***Commonwealth v. Gould***, 912 A.2d 869, 872 (Pa. Super. 2006) (citation

omitted). Because the absence of the Rule 2119(f) statement does not impede our review, we proceed.

We next must ascertain whether Alum has raised a substantial question. "A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa. Super. 2010) (citation omitted).

In this case, Alum was convicted of three crimes: two counts of PWID, and one count of possession of a controlled substance. The court did not impose a separate sentence for each count. Alum was sentenced to a term of three to ten years' imprisonment on count one and was assessed no further penalty on the remaining counts. For count one, with his prior record score of five and an offense gravity score of six, the standard range sentence is twenty-one to twenty-seven months. The aggravated range is thirty-three months. Alum was sentenced to a minimum of thirty-six months. Thus, in imposing the sentence, the trial court deviated from the sentencing guidelines by exceeding the aggravated range by three months. Alum alleges that the trial court failed to articulate a reasonable basis for deviating from the guidelines. We have found previously that claims like Alum's have raised substantial questions. **See Commonwealth v. Garcia-Rivera**, 983 A.2d 777, 780 (Pa. Super. 2009); **Commonwealth v. Wagner**, 702 A.2d 1084, 1086 (Pa. Super. 1997). Because Alum has raised

a substantial question, we proceed to the merits of his appeal. *See* 42 Pa.C.S.A. § 9781(c)(3).

In his brief, Alum argues that the sentencing court did not articulate a reasonable basis to deviate from the aggravated range of the sentencing guidelines. He states that the sentencing court impermissibly cited his prior record as the reason for deviation and, that because this was the only basis for the deviation, the court abused its discretion. Brief for Alum at 17. However, because the sentencing court did cite both a factual basis and specific reasons for its deviation, Alum's argument is unconvincing.

We have held that:

> [T]he sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.

*Commonwealth v. Warren*, 84 A.3d 1092, 1097 (Pa. Super. 2014) (emphasis omitted; brackets in original).

In this case, when deviating from the sentencing guidelines, the court stated the following:

> As a departure, this court has imposed this sentence above all sentencing guidelines and has done so due to the serious nature of this offense and, in particular, the fact that [Alum] has three prior convictions for possession with intent to deliver. This is his fourth conviction for delivery of a controlled substance

- 9 -

Additionally, the court has considered the pre-sentence investigation report prepared by the Fayette County Adult Probation Department. I have carefully considered [Alum's] prior record. I've taken into consideration [Alum's] rehabilitative needs and the gravity of the offenses for which [he has] been convicted. I believe that a lesser sentence would depreciate the seriousness of the crimes. This court feels [Alum is] in need of correctional treatment that can be provided most effectively by [his] commitment to an institution.

N.T., 2/12/2015, at 6-7 (minor grammatical changes made for clarity).

It is clear that the sentencing court considered more than what Alum alleges. Along with his prior record and the gravity of the offense, the court also considered Alum's rehabilitative needs, and more importantly, the pre-sentence investigation report. We have previously held:

Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988).

- 10 -

As the sentencing judge in this case had the pre-sentence report, and referenced it at sentencing, she had adequate information to sentence Alum, and she weighed that information accordingly. The sentencing court cited the pre-sentence report, Alum's prior record, his rehabilitative needs, and the seriousness of his offense. Therefore, the court provided a reasonable explanation for its deviation from the sentencing guidelines. We find no manifest abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/20/2015</u>