J-S54031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BUCKLEY LAWRENCE THOMPSON, | : | |
| | : | |
| Appellant | : | No. 2029 WDA 2015 |

Appeal from the Judgment of Sentence December 4, 2015
in the Court of Common Pleas of Mercer County,
Criminal Division, No(s): CP-43-CR-0000566-2015

BEFORE:  BENDER, P.J.E., OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED AUGUST 16, 2016**

Buckley Lawrence Thompson ("Thompson") appeals from the judgment of sentence imposed following his convictions of one count each of aggravated assault, simple assault, recklessly endangering another person ("REAP"), and harassment.[1]  We affirm.

The trial court set forth the relevant facts as follows:

[Thompson] was arrested on March 28, 2015, and charged with [the above-listed crimes].  The charges arose out of the allegation that [Thompson] beat Joseph Steen ["Steen"], age 76, about the face and arms with a  [six-foot long] bamboo pole[,] causing [] Steen a small brain bleed.

...

[] Steen testified that [Thompson] lived with him on and off for over 20 years.  On March 28, 2015, sometime between [3:00 a.m.] and [4:00 a.m.], [Thompson] came into the residence and began to [slap] [] Steen.  [Thompson] told [] Steen: "You know I do this because I can."  After a few minutes, [Thompson] got a [six-foot long] bamboo rod and began to strike [] Steen about his head and arms.  The rod eventually broke in half.

---

[1] 18 Pa.C.S.A. §§ 2702, 2701, 2705, 2709.

The beating stopped and [] Steen tried to get some sleep. When he awoke, he had trouble breathing. The police and an ambulance were called.

[] Steen was taken to the emergency room at The Sharon Regional Health System. A CAT scan showed a subdural hematoma. As a result, [] Steen was transferred to St. Elizabeth's Hospital in Youngstown, Ohio, the closest trauma center.

Trial Court Opinion, 2/2/16, at 1-2.

After a three-day trial in October 2015, a jury found Thompson found guilty of aggravated assault, simple assault, and REAP.[2] On December 4, 2015, the trial court sentenced Thompson to an aggregate term of 8-20 years in prison. Thompson filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Thompson raises the following question for our review: "Did the trial court err when it denied [] [Thompson's] eight (8) objections and/or requests for mistrials[?]" Brief for Appellant at 4 (capitalization omitted).

Our standard of review is as follows:

A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a

---

[2] The trial court, rather than the jury, found Thompson guilty of harassment.

mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

An abuse of discretion is more than an error in judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

When the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden … It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, [it was] charged with the duty imposed on the court below; it is necessary to go further and show an abuse of discretionary power.

**Commonwealth v. Tejeda**, 834 A.2d 619, 623-24 (Pa. Super. 2003) (citations and quotations omitted).

In Thompson's first claim, he contends that during jury selection the Commonwealth committed a **Batson**[3] violation by striking an African-American venireperson without race-neutral grounds for doing so. Brief for Appellant at 9-10. Thompson asserts that "the reason given by the Commonwealth [for striking the juror] was that an unknown individual in the District Attorney's office wrote 'No'" on the juror's questionnaire when it was circulated throughout the District Attorney's office. **Id.** at 10.

In order to establish a **Batson** claim, a defendant must establish a *prima facie* case of purposeful discrimination. To do so, a defendant must demonstrate that he/she is of a cognizable racial group; that the prosecution has exercised peremptory challenges to exclude members of that racial group from the panel of venirepersons; and finally, that these facts and any other relevant circumstances raise an inference that the prosecutor

---

[3] **Batson v. Kentucky**, 476 U.S. 79 (1986).

used peremptory challenges to exclude venirepersons on the basis of race. Implicit in this scheme is the notion that peremptory challenges constitute a jury selection practice that allows for such discrimination by those who have a design to discriminate. If a defendant succeeds in establishing a *prima facie* case of purposeful discrimination, the prosecution is then required to provide non-discriminatory reasons for striking the potential jurors.

*Commonwealth v. Abu-Jamal*, 720 A.2d 79, 113-14 (Pa. 1998) (citations omitted). Further, to prove a **Batson** violation, the moving party must provide a full record of the alleged violation. *Commonwealth v. Uderra*, 862 A.2d 74, 84 (Pa. 2004). Specifically, the moving party must identify the race of all the venirepersons removed by the prosecution, the race of the jurors who served, and the race of the jurors acceptable to the Commonwealth who were stricken by the defense. *Commonwealth v. Washington*, 927 A.2d 586, 609 (Pa. 2007).

Here, Thompson failed to develop even a partial **Batson** record. *See Uderra*, 862 A.2d at 84. Moreover, even if Thompson had developed a full **Batson** record and established a *prima facia* case, his contention lacks merit. Our review discloses that Assistant District Attorney Mary Odem, Esquire ("ADA Odem") explained that the venireperson in question was struck because someone in the District Attorney's office indicated that the venireperson should not be on the jury. N.T. (Excerpt from Jury Selection), 10/19/15, at 3. The trial judge found Odem's reasoning to be credible, and determined that the race-neutral basis for striking the venireperson was persuasive. *See id.* at 4; *see also Commonwealth v. Sanchez*, 36 A.3d

- 4 -

24, 46 (Pa. 2011) (stating that the trial court judges the credibility of the prosecutor in determining the reasoning for striking jurors). Thus, Thompson's first claim does not establish a **Batson** violation. **See Sanchez**, 36 A.3d at 46 (concluding that the appellant had not provided evidence in support of his discrimination claim, and thus could not show that the trial court had abused its discretion); **see also Commonwealth v. Simmons**, 662 A.2d 621, 631 (Pa. 1995) (stating that "[t]he use of a peremptory challenge on a single person of color without more is insufficient to establish a **Batson** violation.").

In Thompson's second claim, he argues that "the Commonwealth used the term 'robbed' when robbery was not a crime charged," thus prejudicing Thompson. Brief for Appellant at 10.

Initially, we note that Thompson objected to the Commonwealth's language, but did not seek a mistrial. **See** N.T., 10/19/15, at 18. Thus, the claim is waived.[4] **See Commonwealth v. Strunk**, 953 A.2d 577, 579 (Pa. Super. 2008) (stating that "[e]ven where a defendant objects to specific

---

[4] Even if Thompson had preserved this claim, we would have concluded that it lacks merit. Here, during opening statements "the Commonwealth argued [that Steen] was robbed of ... love, protection, and security" due to Thompson's beating. N.T., 10/19/15, at 18. Contrary to Thompson's argument, "robbed" is an illustrative term commonly used outside of the legal field. The prosecutor's use of rhetorical flourish would not have prejudiced the jury. **See Commonwealth v. Thomas**, 54 A.3d 332, 339 (Pa. 2012) (stating that a prosecutor's claim that a defense attorney was attempting to "shoot the messenger" in a case involving the killing of a witness was not prejudicial to the defendant as to render the jury incapable of delivering a fair verdict).

conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver.").

In Thompson's third claim, he contends that Steen's testimony that Thompson attempted to strangle him with a t-shirt during the attack prejudiced Thompson by introducing an allegation of attempted homicide, a crime for which Thompson was not charged. Brief for Appellant at 10-11.

Here, Thompson merely objected to this aspect of Steen's testimony, and did not move for a mistrial on this basis. N.T., 10/19/15, at 25-26. This claim is thus waived. *See Strunk*, 953 A.2d at 579.

In Thompson's fourth claim, he contends that Steen's testimony that, following the attack, he told Thompson that an apology was not going to "cut it this time" prejudiced Thompson by referencing an uncharged crime. Brief for Appellant at 12 (citing N.T., 10/19/15, at 30).

Thompson's entire argument consists of two sentences, without citation to any relevant authority. **See** Pa.R.A.P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued ... followed by such discussion and citation of authorities as are

deemed pertinent."). Thus, his claim is waived.[5] ***See Commonwealth v. Hakala***, 900 A.2d 404, 407 (Pa. Super. 2006) (stating that "because [appellant] fails to offer either analysis or case citation in support of the relief he seeks, we deem all of his questions waived.").

In Thompson's fifth claim, he argues that, through the Commonwealth's direct examination of Steen, the Commonwealth introduced evidence that Thompson had not contacted or visited Steen following the beating. Brief for Appellant at 12. According to Thompson, "the questioning [of Steen] was done with the full knowledge that Thompson remained incarcerated" at the time and could not have visited Steen, thus creating bias and hostility towards Thompson in the minds of the jury. ***Id.***

Here, ADA Odem asked Steen whether he "had any contact with [Thompson] since [the] incident," to which Steen responded "[n]o." N.T., 10/19/15, at 41. ADA Odem then asked Steen whether Thompson had either called or visited him since the incident, and Steen answered "[n]o" to both questions. ***Id.*** Defense counsel then called for a sidebar, during which he objected to the line of questioning and moved for a mistrial. ***Id.*** at 41-

---

[5] Even if we were to address this claim, we would conclude that it lacks merit. We note that Thompson's counsel moved for a mistrial following this aspect of Steen's testimony. However, Steen's vague use of the phrase "this time" does not implicate a "distinct crime" committed by Thompson. ***See*** N.T., 10/19/15, at 30 (wherein the trial court denied the mistrial request). Indeed, Steen had already testified that his relationship with Thompson "was good for awhile. Then things started changing." ***Id.*** at 21. We would conclude that the trial court did not abuse its discretion in denying Thompson's request for a mistrial. ***See Tejeda***, 834 A.2d at 623.

- 7 -

42. The trial judge asked ADA Odem what the purpose of the line of questioning was, to which ADA Odem responded, "[Thompson] wrote him a letter. He hasn't called, but he wrote a letter. That's the contact." *Id.* at 41. ADA Odem explained to the trial judge that Steen thought there had been no contact between him and Thompson because Steen did not understand that Thompson's letter to him constituted contact. *Id.* at 42. The trial judge directed Odem to "go to the letter" and not ask Steen about Thompson either calling or visiting because such a line of questioning might cause a mistrial. *Id.* The trial judge then denied Thompson's request for a mistrial. *Id.* Thereafter, the trial judge asked Steen to identify the letter and Thompson's handwriting, and allowed ADA Odem to read a portion of the letter in front of the jury.[6] *Id.* at 44.

Our review of the examination reveals that the Commonwealth was laying the foundation for introducing the letter into evidence. *See* Pa.R.E. 901 (stating that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence

---

[6] The letter read as follows:

> Hi Joe. I'm sorry for what I did. I hope you are okay. I feel real bad. You have done good for me. The booze is what set it off and the cold pills. I seen Dustin, my son, the other day I left at Circle K's. He would not talk to me. It set me off. And I drank too much. I'm sorry for putting you through all this. I hope they find out what is setting me off. I wish you well. I love you. The food in the fridge is probably bad. I will call you in five days. Again, I'm sorry.

N.T., 10/19/15, at 44.

sufficient to support a finding that the item is what the proponent claims it is."). Thompson does not take issue with the introduction of the contents of the letter, just the line of questioning preceding its introduction. We conclude that the trial judge did not abuse his discretion in denying Thompson's request for a mistrial, thus Thompson's claim must fail. **See Tejeda**, 834 A.2d at 623.

In Thompson's sixth claim, he contends that an employee with the Mercer County Clerk of Courts, who was called as a witness by the Commonwealth, referenced a prior, *nolle prossed* burglary charge against Thompson during her testimony. Brief for Appellant at 12-13. Thompson argues that he was never convicted of burglary and was thus prejudiced by this testimony. **Id.** at 13.

Our review discloses that, while outlining two of Thompson's previous criminal dockets, the witness inadvertently and incorrectly stated that Thompson had been convicted of burglary. N.T., 10/20/15, at 101-02. Instead, Thompson had pled guilty to theft by unlawful taking and theft from a motor vehicle. **Id.** at 103. Thompson moved for a mistrial, asserting that the witness's mistake was prejudicial and could not be corrected by a cautionary instruction. **Id.** at 101. The trial judge denied the request for a mistrial and, instead, informed the jury that Thompson had not been convicted of burglary. **Id.** at 104.

Here, the Commonwealth did not intentionally elicit the reference to Thompson's withdrawn burglary charge. *See id.* at 100; *see also Sattazahn* 631 A.2d 597, 608 (stating that "[t]he nature of the reference and whether the remark was intentionally elicited by the Commonwealth are [] factors to be considered in determining whether a mistrial is necessary."). Further, the trial judge quickly clarified to the witness and the jury that the witness had misspoken, and that Thompson had not been convicted of burglary. N.T., 10/20/15, at 104; *see also Sattazahn*, 631 A.2d at 608 (stating that "an immediate curative instruction to the jury may alleviate the harm which would otherwise result from reference to prior criminal conduct."). We conclude that Thompson was not prejudiced by this exchange, and thus the trial court did not abuse its discretion in denying motion for a mistrial. *See Tejeda*, 834 A.2d at 623.

In Thompson's seventh claim, he contends that the trial judge erred by not granting a mistrial where Odem referenced the Commonwealth's "other witnesses" despite such witnesses being repeatedly rejected by the court at side bar and in recess. Brief for Appellant at 13. Thompson asserts that

> [t]he only plausible reason to call more witnesses by the Commonwealth was that the Commonwealth had more evidence to prove Thompson's guilt. And since the trial court was clear in its ruling [on the witnesses], making such a request again in front of the jury could only have been done to prejudice Thompson by that basis.

*Id.*

We note that Thompson did not object to the statement or move for a mistrial when the statement was made. Thus, his claim is waived.[7] ***See Strunk***, 953 A.2d at 579.

Finally, Thompson baldly claims that because each of the issues he raised should independently warrant a mistrial, the cumulative effect should "surely" do the same. Brief for Appellant at 14. However, "[w]here a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis." ***Commonwealth v. Wright***, 961 A.2d 119, 158 (Pa. 2008). Based upon our foregoing discussion, we conclude that this issue lacks merit.

Judgment of sentence affirmed.

---

[7] The trial court addressed Thompson's claim as follows:

> The first the jury heard the Commonwealth had other witnesses that the Court would not permit to testify is not so prejudicial as to warrant a mistrial. It is the same as when a Court grants a defendant's objection. The jury is left with an impression there is something else, but they are specifically told they are not to concern themselves with the ruling. To grant a mistrial under these circumstances would make it impossible to try any case."

Trial Court Opinion, 2/2/16, at 9; ***see also*** N.T., 10/19/15, at 14 (wherein the trial judge instructed the jury that "[a] statement by an attorney is not evidence.").

- 11 -

J-S54031-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2016