J-S27034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CALVIN ATKERSON, | |
| Appellant | No. 1861 EDA 2015 |

Appeal from the Judgment of Sentence June 8, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.: CP-51-CR-0012812-2011
CP-51-CR-0012813-2011
CP-51-CR-0012814-2011

BEFORE: GANTMAN, P.J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 04, 2017**

Appellant, Calvin Atkerson, appeals from the judgment of sentence entered following his jury conviction for first-degree murder, carrying a firearm without a license, possessing an instrument of a crime, attempted murder, recklessly endangering another person, and possession with intent to deliver a controlled substance.[1] We affirm.

We take the relevant facts and procedural history of this case from our review of the certified record and the trial court's February 24, 2016 opinion. On September 9, 2011, Appellant was walking down Fairhill Street in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502, 6106(a)(1), 907(a), 901(a), and 2705; 35 P.S. § 780-113(a)(30), respectively.

Philadelphia, when he encountered Jasper Washington. Appellant asked Mr. Washington what he was looking at. (***See*** N.T. Trial, 6/03/15, at 68). Mr. Washington responded "[y]ou got it; you got it[,]" which he explained meant "I don't want no problems." (***Id.*** at 68, 71). After Appellant and Mr. Washington had a brief argument, Appellant walked away and told Mr. Washington that he would be back. (***See id.*** at 68).

When Appellant returned a few minutes later, Mr. Washington was standing outside his mother's house. Appellant pulled out a gun and aimed it at him, misfiring once, and then firing eleven bullets in his direction. Mr. Washington hid behind a nearby car while Appellant was shooting, and Claudette Faulkner Johnson, Mr. Washington's mother, observed the shooting from her front porch. (***See id.*** at 21-25, 79-80). One of the bullets that Appellant fired struck James Hall, who had been sitting on a nearby stoop reading a magazine. When police arrived, they rushed Mr. Hall to the hospital; however, he died soon thereafter as a result of the gunshot wound. (***See*** N.T. Trial, 6/04/15, at 33, 35).

After the shooting, Appellant fled and hid in his friend Jorge Santiago's house at 2449 Fairhill Street. (***See*** N.T. Trial, 6/02/15, at 96-97). Upon arriving at Mr. Santiago's house, Appellant told him that he had gotten into an argument where a "dude threatened his son's life," so he pulled out the gun and shot him to make an example of him. (***Id.*** at 114; ***see id.*** at 118-19, 154). Appellant hid the gun and his clothing in Mr. Santiago's basement. (***See id.*** at 123-24).

Police arrived on the scene soon thereafter and were told that the shooter, Appellant, was inside 2449 Fairhill Street. (*See* N.T. Trial, 6/03/15, at 116). They obtained a search warrant for the house, and found Appellant inside. In a search incident to arrest, officers recovered thirty dollars from Appellant's pockets, as well as 9.463 grams of crack cocaine. (*See id.* at 150-51; N.T. Trial, 6/04/15, at 12). A further search of the residence revealed a bag containing a t-shirt and a 9-millimeter gun, which matched the eleven fired cartridge casings recovered from the scene. (*See* N.T. Trial, 6/02/15, at 66, 172-73; N.T. Trial, 6/04/15, at 81, 83).

Appellant's grandmother and cousin testified for the defense, claiming that Mr. Washington had thrown a brick through the front window of their house two days before the shooting. (*See* N.T. Trial, 6/05/15, at 8-9, 16). Appellant also called his uncle, Eric Wilson, who testified that he was present when Appellant and Mr. Washington had argued earlier in the day and that Mr. Washington had threatened Appellant.

Appellant also took the stand to testify on his own behalf; however, soon after taking the stand, Appellant started to offer his personal opinion on the case and stated: "These racist jurors got their mind made up. . . . The DA, the jurors, they don't like me. They winking at the D.A." (*Id.* at 36). The court sustained the Commonwealth's objection and took the jury out of the courtroom. Defense counsel requested a mental health examination for his client, which the court denied, explaining that it considered Appellant's outburst a planned tactic. (*See id.* at 38-39).

- 3 -

Appellant explained that he did not want to continue testifying. He then asked the court for a non-jury trial, which the court also denied, noting that the Commonwealth had not agreed to Appellant's earlier request for a non-jury trial. (*See id.* at 42-43). The court denied Appellant's request for a mistrial. (*See id.* at 46).

On June 8, 2015, a jury convicted Appellant on all counts. On the same date, the court sentenced Appellant to a mandatory term of life imprisonment on the first-degree murder charge, and imposed consecutive sentences of imprisonment of not less than ten nor more than twenty years for attempted murder, and not less than five nor more than ten years for possession with intent to deliver. Appellant did not file any post-sentence motions. This timely appeal followed.[2]

Appellant raises four issues on appeal:

I. [Whether] the evidence presented was inconsistent [sic] to sustain a conviction[?]

II. [Whether] the weight of the evidence presented was not sufficient to support the Appellant's conviction[?]

III. [Whether] the court erred in failing to grant [Appellant's] motion for a mistrial[?]

IV. [Whether] the court erred in failing to grant the defense counsel's request for a mental health examination[?]

---

[2] Appellant filed a notice of appeal on June 19, 2015. Pursuant to the court's order, he filed a timely statement of errors complained of on appeal on December 30, 2015. *See* Pa.R.A.P. 1925(b). The trial court entered its opinion on February 24, 2016. *See* Pa.R.A.P. 1925(a).

(Appellant's Brief, at 6) (most capitalization omitted).

In his first issue, Appellant purports to challenge the sufficiency of the evidence to support his conviction. (**See id.** at 10-12). However, he has waived this claim.

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. . . .

**Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013) (citations and quotation marks omitted).

Here, Appellant's concise statement of errors complained of on appeal merely states: "The evidence was insufficient to sustain a conviction on any of the charges." (**See** Statement of Matters Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b), 12/30/15). Appellant's statement of the questions involved is equally vague. (**See** Appellant's Brief, at 6). Appellant fails to specify the crimes and element or elements for which he alleges the evidence was insufficient. Thus, we conclude Appellant has waived his first issue. **See Garland**, **supra** at 344.

Moreover, we observe that even if Appellant had not waived his sufficiency claim, his argument that "witness statements were inconsistent, unreliable and failed to prove [his] participation in the alleged crime[,]" challenges the credibility of the witnesses. (Appellant's Brief, at 10) (most

capitalization omitted). Such argument concerning witnesses' credibility goes to the weight of the evidence, not the sufficiency. **See Commonwealth v. Griffin**, 65 A.3d 932, 939 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013) ("[A]rgument [concerning] the credibility of the witness's testimony, [] is . . . not an attack on the sufficiency of the evidence, but an allegation regarding the weight it should have been afforded.") (citation omitted). Therefore, Appellant's sufficiency claim would fail even if he did not waive it.

In his second question on appeal, Appellant claims that the verdict was against the weight of the evidence. (**See** Appellant's Brief, at 12-13). Appellant has not preserved his argument, thus it is waived.

"[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. [**See**] Pa.R.Crim.P. 607. Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." **Griffin**, **supra** at 938 (case citations omitted). Here, Appellant did not raise a weight of the evidence claim in a post-sentence motion, nor did he address the issue via motion or orally prior to sentencing. Consequently, his claim related to the weight of the evidence is waived.

In his third issue, Appellant claims that the trial court erred when it denied his request for a mistrial. (**See** Appellant's Brief, at 13-14). Specifically, he argues that the jury was so prejudiced after he referred to them as "these racist jurors" that the court's instruction for them to ignore

his outburst could not rectify the prejudicial effect of his remarks, and the jury could no longer render a fair and impartial verdict. (*Id.* at 14) (quoting N.T. Trial, 6/05/15, at 36). We disagree.

> A motion for a mistrial is within the discretion of the trial court. [A] mistrial [upon motion of one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

***Commonwealth v. Tejeda***, 834 A.2d 619, 623 (Pa. Super. 2003) (citations and quotation marks omitted). We have held that "the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.* (citation omitted); ***see also Commonwealth v. Marinelli***, 690 A.2d 203, 219 (Pa. 1997), *cert. denied*, 523 U.S. 1024 (1998) (concluding that trial court did not abuse its discretion in denying motion for mistrial where appellant's outburst did not deny him fair trial).

Here, the trial court explained its reason for denying Appellant's motion for a mistrial as follows:

> [The trial] court is firmly of the belief that it correctly denied [Appellant's] request for a mistrial. [It] finds no merit to this assignment of error, as the alleged prejudicial event (the comments about the "racist" jury were delivered by [Appellant] himself from the witness stand) was clearly a planned tactic on [Appellant's] part utilized to abort the trial. Furthermore, [the

- 7 -

trial] court instructed the jury to ignore [Appellant's] ourburst as well as not to hold against [Appellant] the fact that he ended up not testifying in his own defense.

[The trial] court, therefore, is satisfied that [Appellant] was not denied his right to a fair and impartial trial, and that the extreme remedy of a mistrial was not warranted. No relief is due.

(Trial Court Opinion, 2/24/16, at 45).

Our review of the record supports the trial court's ruling. At the beginning of Appellant's testimony, the trial court cautioned him that he was not permitted to offer his personal opinions. Thereafter, when he made the statement about racist jurors, the trial court directed that he be taken out of the courtroom. As he was leaving, Appellant shouted, "[the jury] heard it already. They heard it already." (N.T. Trial, 6/05/15, at 37). Upon his return, he requested a bench trial (which had been denied prior to trial), and a mistrial; the court denied both requests. (*See id.* at 42-43, 46). When the jury returned to the courtroom, the court gave the following instruction:

Ladies and gentlemen, I just have to caution you to totally ignore the outburst by [Appellant]. Pay it absolutely no mind. Please, in no way hold it against him. I have stricken what he said from the record, and as I told you at the outset, when anything is stricken from the record, you are to ignore it completely. . . .

(*Id.* at 47). We agree with the trial court that a mistrial was unwarranted, and conclude that it did not abuse its discretion in denying Appellant's request. *See Marinelli*, *supra* at 219; *Tejada*, *supra* at 623; *see also Commonwealth v. Laird*, 988 A.2d 618, 629 (Pa. 2010) ("[A]bsent evidence to the contrary, the jury is presumed to have followed the trial

court's instructions[.]") (citation omitted).  Appellant's third issue does not merit relief.

In his final issue, Appellant claims that because his ability to participate and assist in his own defense was hindered, the trial court erred when it denied his request for a mental health examination.  (*See* Appellant's Brief, at 14-15).  He argues that his "mental state was clearly at issue when he made a damaging outburst in front of the jury.  In fact, his outburst insulted the jury." (*Id.* at 15).  We disagree.

Initially, we note that Appellant does not claim specifically that he was incompetent—that he was unable to cooperate with counsel and participate in his own trial.  Rather, he argues that a mental health examination was necessary to determine his competency.  (*See id.* at 14-15).  We review a trial court's denial of a request to order a competency examination for an abuse of discretion.  *See Commonwealth v. Mayer*, 685 A.2d 571, 572 n.1 (Pa. Super. 1996); *see also* 50 P.S. § 7402(d) (providing that court "may order an incompetency examination").

Here, Appellant's counsel requested a mental health examination after Appellant's outburst.  Counsel stated, "I think my client needs a mental health exam, because after talking to him in between here and the last time I talked to you, he tells me, I can do anything I want."  (N.T. Trial, 6/05/15, at 38-39).  The court denied counsel's request, explaining that it thought the outburst was a planned tactic on Appellant's part.  (*See id.* at 39).  The court explained that, based on its observations, Appellant had the ability to

- 9 -

cooperate with counsel and participate in the proceedings. (***See*** Trial Ct. Op., at 48).

Upon careful review, we conclude that the trial court did not abuse its discretion in denying counsel's request for a mental health examination. ***See Mayer***, ***supra*** at 572 n.1. Appellant's fourth issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/4/2017