J-S44039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILLIAM BROWN, | : | |
| | : | |
| Appellant | : | No. 2149 EDA 2015 |

Appeal from the Judgment of Sentence May 15, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0013549-2008

BEFORE: FORD ELLIOTT, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 29, 2016**

William Brown ("Brown") appeals from the judgment of sentence imposed after a jury convicted him of persons not to possess firearms.[1] We affirm.

The trial court summarized the relevant facts underlying this appeal as follows:

> This case arises from an incident occurring on June 10, 2008[,] in the 5800 block of West Arch Street in Philadelphia. At that time, Philadelphia Police Sergeant [Rodney] Linder ["Sergeant Linder"] was conducting surveillance on the aforesaid block when, according to [] Sergeant [Linder's] testimony, he saw an older black male (approximately 50 years old) walk up the street with money in his hand and approach [Brown,] who was sitting on the front steps of the porch of a residence located at 5839 W. Arch St[reet.[2]] A marked narcotics unit patrol car happened to drive by at that moment[.] … [Sergeant] Linder [saw Brown]

---

[1] 18 Pa.C.S.A. § 6105(a).

[2] Notably to this appeal, Sergeant Linder testified that the residence was located in a high-crime area known for drug sales and gun violence. N.T., 2/10/15, at 16.

shake his head "no" as [Brown] pointed to the patrol car, at which point[] the older black male walked down the steps and away from the residence.

Thereafter, [Sergeant] Linder observed [Brown] roll a marijuana cigar[, commonly referred to as a "blunt."] … [Sergeant Linder] then radioed for backup officers to move in. As two other [uniformed] police officers approached [Brown] on his porch, he [immediately] threw his cigar on the ground and attempted to enter the house. The officers pulled [Brown] away from the front door and one of the officers immediately felt a firearm on [Brown's] hip. The officer recovered a .40 caliber Smith and Wesson [handgun] from [Brown's person], as well as several small packets of marijuana and crack cocaine. Due to a prior conviction for possession with intent to distribute a controlled substance, [Brown] was prohibited from possessing said firearm.

Trial Court Opinion, 10/8/15, at 1-2 (footnote added, some capitalization omitted).

Following Brown's arrest, the Commonwealth charged him with persons not to possess firearms, as well as other firearms- and drug-related offenses (collectively referred to as "the remaining offenses"). Brown filed a Motion to suppress, asserting that the drugs and firearm that the police seized were inadmissible as being the product of an unlawful, warrantless seizure and search. Following a suppression hearing, the trial court denied Brown's Motion. The matter proceeded to a jury trial, on the charge of persons not to possess firearms alone.[3]

Relevant to the instant appeal, Brown's defense counsel made an oral Motion for a mistrial following an allegedly improper comment that the

---

[3] The remaining offenses were either dismissed or *nolle prossed* in the interim.

prosecutor made during her opening statement.[4]  The trial court denied the Motion at a sidebar, and thereafter issued a cautionary instruction to the jury.  At the close of trial, the jury found Brown guilty of persons not to possess firearms.

On May 15, 2015, the trial court sentenced Brown to serve four to eight years in prison.  Thereafter, Brown filed a post-sentence Motion seeking a new trial based upon the challenged opening remark, which the trial court denied.

Brown timely filed a Notice of Appeal.  In response, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Brown timely filed a Concise Statement, after which the trial court issued a Pa.R.A.P. 1925(a) Opinion.

Brown now presents the following issues for our review:

A.  Did the trial court err in denying [Brown's] Motion to suppress by finding that [the arresting] police officers had reasonable suspicion and did not need probable cause?

B.  Did the trial court err in denying [Brown's] Motion for a new trial as a remedy for unduly prejudicial statements made by the prosecution during her opening statement?

Brief for Appellant at 3 (capitalization omitted).

---

[4] Specifically, as we discuss below, the prosecutor stated to the jury, concerning the older black male who had stopped his approach to Brown upon seeing Brown shake his head and point at the police cruiser, as follows: "Sergeant Linder is going to tell you, he, in his experience, believed that to be an aborted drug sale."  N.T., 2/11/15, at 4.  For ease of reference, we will hereinafter refer to this comment as the "challenged opening remark."

Brown first argues that the trial court erred by denying his Motion to suppress the handgun that police discovered on his person, as this evidence was seized during an unlawful investigative detention that was not supported by reasonable suspicion. *See id.* at 6-7. Brown asserts that

> [Sergeant] Linder's initial observation of [Brown] refusing conversation with a passerby is non-criminal conduct and is consistent with benign behavior, even when the passing police vehicle is considered. [Sergeant] Linder's sole observation of [Brown] refilling a cigar with a substance that [Sergeant] Linder could neither see, touch, taste, nor smell is insufficient to establish reasonable suspicion. Without any means of determining the substance, [Sergeant] Linder's conclusion that [Brown] rolled a marijuana blunt amounts to nothing more than a hunch, especially considering that the substance in the cigar was never actually identified. … While [Brown's] conduct was furtive, such furtive movements, even when accompanied with flight in an area with previous reports of criminal activity, do not establish an adequate basis for reasonable suspicion.

Brief for Appellant at 7 (citation to record omitted). Additionally, Brown contends that the search and seizure was unlawful because he was located on the curtilage (*i.e.*, front porch) of the residence at the time of the seizure, and the police therefore needed, but lacked, probable cause to arrest him. *Id.* at 7-8 (citing **Commonwealth v. Gibbs**, 981 A.2d 274, 279 (Pa. Super. 2009) (stating that the constitutional protections to be free from an unreasonable search or seizure in a private home extend to the curtilage of the home, which can include a front porch under certain circumstances

where there is a reasonable expectation of privacy);[5] **see also** Brief for Appellant at 8 (wherein Brown states that his "use of a fence or gate across a furnished, semi-enclosed porch indicated an intention to restrict the area from the general public.").

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Perel**, 107 A.3d 185, 188 (Pa. Super. 2014) (citation and ellipses omitted).

In its Opinion, the trial court summarized the parties' respective arguments concerning the Motion to suppress, aptly set forth the relevant law and evidence of record, and determined that (1) under **Gibbs**, **supra**, the front porch of the residence in question did not constitute curtilage, and,

---

[5] In **Gibbs**, this Court found neither legal precedent nor evidence in the record before it supporting the proposition that occupants of a home had a Fourth Amendment-based reasonable expectation of privacy in an empty, unenclosed front porch abutting the sidewalk and otherwise devoid of any attribute indicating an intent to deny access to the general public. **Gibbs**, 981 A.2d at 280.

therefore, probable cause was not necessary to support the search and seizure of Brown's person; and (2) the totality of the circumstances gave the police reasonable suspicion to stop Brown on the porch from fleeing inside the residence. **See** Trial Court Opinion, 10/8/15, at 2-13. The trial court's analysis is sound and supported by the record, and we thus adopt it herein by reference. **See id.**

Concerning Brown's challenge that the police lacked reasonable suspicion to conduct a lawful investigative detention, we are mindful of the following.

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

**Commonwealth v. Ranson**, 103 A.3d 73, 77 (Pa. Super. 2014) (citation omitted).

Here, the trial court ruled that Sergeant Linder possessed reasonable suspicion based upon his following observations: "(1) [Brown's] aborted drug sale with the other black male; (2) [Brown] rolling the cigar in a unique way[,] which the Sergeant recognized[,] from his years of experience[,] as

the rolling of a marijuana … blunt; and (3) [Brown] throwing the blunt to the ground when he saw the officers[,] and then trying to flee by entering the house." Trial Court Opinion, 10/8/15, at 3; *see also* N.T., 2/10/15, at 18-26 (Sergeant Linder's testimony); *id.* at 44 (testimony of one of the backup officers who placed Brown in custody that Brown, immediately upon noticing the uniformed officers approach the porch, threw the blunt, "stood up[,] and went for the door," trying to unlock it with a key). Moreover, Sergeant Linder testified that the residence was located in a known high-crime area. N.T., 2/10/15, at 16. We agree that the totality of these circumstances, in conjunction, was sufficient to establish reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (holding that a police officer is justified in reasonably suspecting that an individual is involved in criminal activity when that individual (1) is present in a high crime area; and (2) engages in unprovoked flight after noticing the police);[6] *Commonwealth v. Miller*, 876 A.2d 427, 430-31 (Pa. Super. 2005) (where the defendant was standing with a group other men on a street corner, and fled from police

---

[6] In *Wardlow*, a four-car police caravan was investigating drug activity in an area of Chicago known for heavy narcotics trafficking. *Wardlow*, 528 U.S. at 121. One of the officers observed the defendant holding an opaque bag. *Id.* The officers did not observe any specific indications that the defendant was in possession of contraband. *See id.* When the defendant saw the police, he immediately fled. *Id.* at 122. The police apprehended him and, during a pat-down search for weapons, recovered a gun. *Id.* The Supreme Court affirmed the denial of the defendant's motion to suppress, reversing the decisions to the contrary by the Illinois courts of appeal. *Id.* at 122-24; *see also In re D.M. II*, 781 A.2d 1161, 1165 n.2 (Pa. 2001) (applying *Wardlow* and declining to adopt greater constitutional rights under the Pennsylvania Constitution).

upon their approaching the group, holding that the defendant's presence in a high crime area, coupled with his flight, was *alone* sufficient to establish reasonable suspicion); ***Commonwealth v. Cottman***, 764 A.2d 595, 599-600 (Pa. Super. 2000) (holding that the defendant's presence in a high crime area, his furtive movement to conceal an object when seen by police, and his flight established reasonable suspicion). Finally, Brown misses the point in attempting to minimize the suspicious nature of his behavior. ***See Commonwealth v. Davis***, 102 A.3d 996, 1000 (Pa. Super. 2014) (stating that "reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further.") (citation omitted). Accordingly, we discern no error of law or abuse of discretion by the trial court in denying Brown's Motion to suppress.

In his second issue, Brown contends that the trial court erred and deprived him of a fair and impartial trial when it denied his Motions for a mistrial and a new trial, made in response to the prosecutor's above-described challenged opening remark. Brief for Appellant at 8. According to Brown, "the Commonwealth's implication[,] made in conjunction with evidence presented to the jury about [Brown's] prior conviction for possession with intent to deliver[,] had the design and effect of inflaming the jury and depriving [Brown] of a fair and impartial trial." *Id.* (some capitalization omitted). Brown claims that the challenged opening remark caused him undue prejudice, and the trial court's giving the jury a mere

curative instruction in response thereto was not sufficient to cure the prejudice. *Id.*

Our standard of review in assessing the denial of a mistrial is as follows:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Johnson*, 107 A.3d 52, 53 (Pa. 2014) (citation omitted); *see also Commonwealth v. Judy*, 978 A.2d 1015, 1019 (Pa. Super. 2009) (observing that a mistrial is an extreme remedy). In reviewing a challenge to a trial court's denial of a motion for a new trial based on alleged prosecutorial misconduct, our standard is abuse of discretion. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013).

In a criminal prosecution, "[t]he purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." *Commonwealth v. Parker*, 919 A.2d 943, 950 (Pa. 2007). "[A] prosecutor's opening statements may refer to facts that she reasonably believes will be established at trial." *Commonwealth v. Begley*, 780 A.2d 605, 626 (Pa. 2001); *see also Commonwealth v. Sneed*, 45 A.3d 1096, 1110 (Pa.

2012) (stating that comments grounded upon the evidence, or reasonable inferences therefrom, are not objectionable). Additionally, the prosecution, as well as the defense, is afforded reasonable latitude in presenting opening arguments to the jury. **Begley**, 780 A.2d at 626.

In its Opinion, the trial court addressed Brown's claim, thoroughly set forth the relevant portions of the trial transcript, and determined that the court did not abuse its discretion in denying Brown's Motions for a mistrial and a new trial. **See** Trial Court Opinion, 10/8/15, at 13-19. Particularly, the court found that the prosecutor's challenged opening remark "was an appropriate summary of the evidence to be presented by the Commonwealth in its case-in-chief[,]" and did not unduly prejudice Brown or deprive him of a fair trial. **Id.** at 17, 18. We agree with the trial court's rationale and determination, and affirm on this basis in rejecting Brown's second issue, **see id.** at 13-19, with the following addendum. Even assuming, *arguendo*, that the challenged opening remark was prejudicial to Brown, the trial court gave the jury a curative instruction immediately after the prosecutor's opening statement,[7] which, we conclude, was adequate to overcome any prejudice. **See Johnson**, **supra** (emphasizing that a mistrial is unnecessary where the trial court issues adequate cautionary instruction); **Commonwealth v. Walter**, 119 A.3d 255, 287 (Pa. 2015) (observing that a jury is presumed to have followed a court's curative instruction).

---

[7] The curative instruction is set forth in the trial court's Opinion. **See** Trial Court Opinion, 10/8/15, at 15, n.8.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

FILED

COMMONWEALTH OF PA          :      CP-51-CR-0013549-2008   OCT 08 2015

                                :                                  Criminal Appeals Unit

CP-51-CR-0013549-2008 Comm. v. Brown, William
Opinion

                                               First Judicial District of PA

     v.


7355393081

                             SUPERIOR COURT NO.:

WILLIAM BROWN                  :      2149 EDA 2015

## OPINION OF THE TRIAL COURT

This is the appeal of the defendant, William Brown, from the Judgment of Conviction and Sentence entered in this matter on May 15, 2015, as well as from an order denying post-sentence relief dated June 17, 2015. The defendant filed a timely Notice of Appeal on July 15, 2015, after which this Court ordered the Defendant to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On August 17, 2015, the Defendant timely filed his Statement of Matters Complained of on Appeal.

This case arises from an incident occurring on June 10, 2008 in the 5800 block of West Arch Street in Philadelphia. At that time, Philadelphia Police Sergeant Linder was conducting surveillance on the aforesaid block when, according to the Sergeant's testimony, he saw an older black male (approximately 50 years old) walk up the street with money in his hand and approach the defendant who was sitting on the front steps of the porch of a residence located at 5839 W. Arch St. A marked narcotics unit patrol car happened to drive by at that moment and the defendant was seen by Sgt. Linder shake his head "no" as he pointed to the patrol car, at which point, the older black male walked down the steps and away from the residence.

1

Thereafter, then Sgt. Linder observed the defendant roll a marijuana cigar and who then radioed for backup officers to move in. As two other Police Officers approached the defendant on his porch, he threw his cigar on the ground and attempted to enter the house. The officers pulled the defendant away from the front door and one of the officers immediately felt a firearm on the defendant's hip. The Officer recovered a .40 caliber Smith and Wesson firearm from the defendant, as well several small packets of marijuana and crack cocaine. Due to a prior conviction for Possession with Intent to Distribute a Controlled Substance, defendant was prohibited from possessing said firearm.

The defendant was tried before a jury and convicted on the charge of Possessing a Firearm by a Prohibited Person (18 Pa.C.S.A. §6105(A)(2)(i)) on February 12, 2015. All other charges were either dismissed or *nolle prossed*. On May 15, 2015, this Court sentenced the defendant to four to eight years confinement.

In his Statement of Matters Complained of on Appeal, the defendant raises the following two issues:

1. The Court erred in denying Appellant's motion to suppress; and,

2. The court erred in denying Appellant's motion for a mistrial and post-sentence motion for a new trial as a remedy for the prosecution's unduly prejudicial remarks made during her opening statement.

The defendant's Motion to Suppress was argued on February 10, 2015. Defendant sought to suppress both the firearm and the narcotics that were recovered from his person and his porch on June 10, 2008. It was defendant's position that the front porch was curtilage to the defendant's home and thus triggers broader protections than a stop on the street, namely, the officers needed probable cause versus a reasonable suspicion in this scenario. Further, the defendant contended that the Officers did not have probable cause to detain or arrest him.

2

Defendant also argued that what the Officers witnessed between the defendant and the other black male was not an aborted sale but a non-sale. Also, the defendant argued that the Officers, upon viewing him throw the cigar to the ground, had no way of knowing that it contained marijuana. Moreover, once the Officers directed the defendant to stop, the arrest began and probable cause was required.

The Commonwealth argued that, under the totality of the circumstances, all that was required to stop the defendant was the officer's reasonable suspicion, to which this Court agreed. According to the testimony of Sgt. Linder, he had reasonable suspicion based on three observations: 1) the defendant's aborted drug sale with the other black male; 2) the defendant rolling the cigar in a unique way which the Sergeant recognized from his years of experience as the rolling of a marijuana cigarette, a/k/a a blunt; and 3) the defendant throwing the blunt to the ground when he saw the officers and then trying to flee by entering the house. Once the Sergeant observed the defendant doing this, he had, at the least, reasonable suspicion to conduct the stop. In attempting to stop defendant from fleeing into his house, police grabbed defendant and immediately felt a firearm which created probable cause for arrest. The narcotics were subsequently recovered incident to the arrest.

The Superior Court has ruled that the "standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. [The] scope of review is limited; [the Superior Court] may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, [the Superior Court is] bound by those facts and may reverse only if the [trial] court erred in reaching its legal conclusions based upon the facts."

3

*Com. v. Reppert*, 2002 PA Super 383, ¶ 5, 814 A.2d 1196, 1200 (2002) (quotations and citations omitted).

This Court has made the following findings of fact based on the evidence and testimony presented at the hearing:

*N.T., 02-10-2015*

Page 74

[THE COURT:] The Commonwealth called as its first witness, police, Sergeant Linder. Sergeant Linder testified that he is presently supervisor of the narcotics enforcement team assigned to the 19th Police District. He stated he's been in that position since 2008 and prior to that, was part of the Narcotics Strike Force, a citywide group. He has been a police officer for 15 years. Sergeant Linder described the difference between the two units, the Narcotics Strike Force and the Narcotics Enforcement Team, as the narcotics Strike

Page 75

...

Force investigating narcotics sales both indoors and outside, while the narcotics enforcement deals solely with outside sales.

Indeed, during direct examination, Sergeant Linder further bolstered his familiarity with narcotics transactions by testifying as follows about his extensive experience observing drug sales and making arrests:

*N.T., 02-10-2015*

Page 11

[Commonwealth] Q. And during that time, about how many drug

4

sales arrests had you made?

**[Sgt. Linder] A.** At that time in 2008?

**Q.** Yes.

...

Page 12

**A.** You're looking at -- by that time my Strike Force time to the two years in, at that time in the 19th, you're looking at approximately -- about 3,000.

**THE COURT**: How many?

**THE WITNESS**: About 3,000. In Strike Force we average around a thousand arrests in my squad a year, and then when I went to the 19th District, NETs Team, we averaged approximately, about 500 arrests a year.

**MS. RHODES**: Okay.

**THE COURT**: Let me just ask you this, Sergeant, as a result of some of your previous answers.

Did all these involve, what you described as these hand-to-hand transactions?

**THE WITNESS**: Of my time in the 19th District, NETs, yes. My time in Strike Force, we did district level hand-to-hand, but also we got involved in houses, inside houses or actually going out and actually purchasing narcotics ourselves.

**THE COURT**: As of 2008, what

...

Page 13

percentage of the 3,000 arrests or how many of the 3,000 arrests that you spoke about, involved these hand-to-hand transactions you describe?

**THE WITNESS**: You could say approximately, about 2,000 of them.

5

Given Sergeant Linder's credibility and expertise, the Court made these further factual findings based on his testimony:

*N.T., 02-10-2015*

Page 75

[THE COURT:] Sgt. Linder stated that on June 10th, 2008 he set up an investigation in the area of the 5800 block of Arch Street. He described this area as a very high crime area, especially for narcotics sales and gun violence. He indicated that six months prior to that date, there was a large gun battle in that immediate area. He stated he was in an unmarked police vehicle in this area with a partner who was the vehicle operator, when he observed the defendant sitting on the porch of 5839 Arch Street. He stated he saw an older black male that he described as around 50 years old, walk up the street with money in his hand, approach the steps of the porch where he had originally seen defendant sitting -- well where defendant was still sitting.

Page 76

...

He testified he saw a marked police vehicle drive up the street and observed the defendant point to the police vehicle and waived this black male away. The black male, according to the testimony of Sergeant Linder, walked down the steps and walked away. At this time, Sergeant Linder testified he observed over 2,000 hand-to-hand narcotics transactions, and he indicated he had made over 200 narcotics arrests for hand-to-hand transactions in this area.[1]

---

[1]     *N.T., 02-10-2015*, P. 16, L.8 to P. 17, L. 23.

6

He said based on his experience and training, coupled with his personal knowledge of the area, as stated above, he believed that he had witnessed an aborted hand-to-hand narcotic transaction. Sergeant Linder testified that he was set up on the 100 block of Hobart Street, and he had a clear view of the porch of 5839 Arch Street, where he said the defendant was sitting. He further testified that he saw the

Page 77

...

defendant after this, what he described as an aborted hand-to-hand transaction take place, sit down on a white plastic chair on that porch. A number of exhibits were identified by this witness, which indicated a map of the area, indicating where his vehicle was parked and where the defendant was sitting on the porch. And this police sergeant pointed out where he was parked and where he observed the defendant. He also identified photos of the porch he questioned. He stated that after defendant sat on this white plastic chair, he pulled out a cigar, split it open, reached into his pocket -- I'm sorry. Shook out the tobacco from that cigar; observed defendant pull out a plastic packet from his pocket, open it with his teeth and pour the contents of the packet into the empty cigar wrapper. He testified that he believed he observe the defendant roll a blunt and fill it with marijuana and was prepared to smoke

Page 78

...

it.[2]

---

[2] *N.T., 02-10-2015*, P. 24, L. 16 to P. 26, L. 12

He stated that based on his experience and what he observed, he believed that he had just saw -- I'm sorry, he indicated based on his experience of what he had just saw, he ordered his backup team to stop the defendant.

He said he saw the defendant immediately throw the cigar to the ground when the back-up police team arrived, and tried to get into his house, when these police officers arrived.

And he stated that the other police officers recovered what he believed was the blunt, which defendant had thrown to the ground.

Police Officer Bransfield testified next, for the Commonwealth.

Police Officer Bransfield stated that on this date, June 10th, 2008, he was one of the responding back-up officers and his partner was Police Officer Vaughn.

He said that he was a police officer at this time for seven years, at that time,

Page 79

...

and was a member of the Narcotics Enforcement Team for two years.

He stated, he and his partner were in an unmarked police vehicle, but they did have on tactical vests, which indicated police on the front an embroided badge.

He testified that as he and his partner approached, he observed the defendant get up, throw the suspected blunt to the ground and attempted to get into his house with a house key that he said defendant's had on a chain or rope around his neck.

He stated he grabbed the defendant to stop him and felt what he immediately believed to be a -- recognized to be a firearm in defendant's waistband.

He said he knows what this feels like, because he said he wears a similar gun

8

every day.[3]
He stated that he did recover the firearm. The firearm was recovered by him and his partner recovered the suspected blunt. The defendant was placed under

Page 80

...

arrest.
A search incident to the arrest, according to this police officer, revealed defendant had in his pocket, 12 packets of alleged crack cocaine in a clear sandwich bag and five packets of alleged marijuana, also in a clear sandwich bag, and they were recovered.[4]
These items, the items seized, the suspected blunt, the firearm, and the packets of alleged crack cocaine and marijuana were all placed on property receipts.
The recovered crack cocaine and marijuana and the blunt were all field NIK tested and all tested positive for the substances, according to this police officer.
There was a stipulation entered into between counsel, that if called to testify, police officer Vaughn would testify that he did NIK test the blunt, and it tested positive for marijuana, and the seizure analysis, if called to testify, would

...

Page 81

testify that the individual would testify that the items recovered showed, it did test positive for crack cocaine and marijuana.

---

[3] *N.T., 02-10-2015*, P. 41, L. 14 to P. 44, L. 21

[4] *N.T., 02-10-2015*, P. 45, L. 14 to P. 46, L. 8; P. 50, L. 11- 22.

This Court then made the following conclusions of law:

Page 81

[6] The defendant argues that police lack
[7] reasonable suspicion to stop and probable
[8] cause to arrest the defendant, based on the
[9] observations of Sergeant Linder and
[10] further, that once on the porch, police
[11] lacked probable cause to arrest the
[12] defendant.
[13] This court disagrees. I find the
[14] police under a totality of the
[15] circumstances, did have a reasonable
[16] suspicion to stop this defendant, based on
[17] the observations of Sergeant Linder.
[18] Thereafter, when defendant attempted
[19] to get away from police by attempting to
[20] enter the house with a key, police were
[21] permitted to stop him, and once they
[22] stopped him and they felt what they
[23] believed to be a firearm, coupled with
[24] recovery of the blunt, had probable cause
[25] to arrest the defendant.

Page 82

. . .
[2] The narcotics recovered were
[3] recovered as a result of a search incident
[4] to [an unlawful arrest,][5] and for these
[5] reasons, defendant's motion to suppress
[6] this physical evidence is denied

This Court's conclusions of law are supported by the holding in ***Commonwealth v. Gibbs***, 2009 PA Super 181, 981 A.2d 274 (2009). In ***Gibbs***, the Superior Court stated "[a]bsent probable cause and exigent circumstances, warrantless searches and seizures in a private home violate both the Fourth Amendment and Article 1, Sec. 8 of the Pennsylvania Constitution." ***Id.*** at ¶ 7, 269 (citations and quotations omitted). These protections have been extended to the

---

[5] The suppression court actually found this arrest to be lawful; the court stenographer wrote "an unlawful arrest" in error and the official court record should be corrected to reflect this change.

10

curtilage of a person's home, which has been defined "in constitutional context as in the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id.* (citations and quotations omitted). However, a porch does not constitute curtilage because it is open enough to allow officers to observe – from a "lawful vantage point" under the plain view doctrine – items that are immediately apparent as incriminating, and thus does not trigger Fourth Amendment protections. *See id.*

There is some dicta in *Gibbs* to which the defendant had alluded to in support of his suppression motion in which he referred to possible gates, fences, and/or walls around the porch.[6] *Gibbs*, however, notes that the porch in question in that case had "no front yard or other enclosed space preceding or surrounding the porch…no gate blocking entry to the porch and nothing else which would indicate that the porch was closed to members of the general public." In the instant case however, any concerns about gates, fences, or walls turning the porch into curtilage are unfounded, as Sergeant Linder testified on cross-examination as follows:

> *N.T., 02-10-2015*
>
> Page 33
>
> …
> [24] [**Mr. Gessner for the Defendant**] Q. And it has a solid wall on two sides; is that
> [25] correct?
>
> Page 34
> …
> [2] [**Sgt. Linder**] A. No.
> [3] Q. The porch has a solid wall leading back up to
> [4] the house; correct?
> [5] A. Oh to the house, but not on either side.
> [6] Q. And it has a solid wall on one side, doesn't

---

[6] See *N.T., 02-10-2015*, P. 68, L. 20 to P. 70, L. 22.

11

it...

**A.** Yes, sir.

**Q.** A brick wall?

**A.** Yes. Well, that picture -- I guess this is a later picture. Like this wall that we are looking at now, here, that wall -- it actually was a window there at one time. Like it was screened -- empty. Peoples' porches here (indicating) were screened in, but this right here had a window right here. I believe this is new, prior to...

**THE COURT**: So the exhibit you're looking at. I'm sorry. What is it labeled as?

**THE WITNESS**: Exhibit.

**MS. RHODES**: C-4, Your Honor.

**THE COURT**: So C-4 has a wall in it, so that if you are looking directly onto the porch, to the left of the porch, it's a solid wall, but you are saying that, on the

Page 35

...

night that you have made these observations that you are testifying to, that wall was not in that condition, that wall had a hole with a window in it?

**THE WITNESS**: Yes, Your Honor.

**BY MR. GESSNER**:

**Q.** And there is a gate or a fence of some sort, in the front part of that porch; correct?

**A.** Yes.

Based on this testimony, the Court found that the gate or fence did not create sufficient expectation of privacy to constitute curtilage. *See* **footnote 5, *supra*.** Therefore, the cigar that the defendant rolled and threw to the ground, which, based on Sergeant Linder's and Officer Bransfield's observations and experience, was in plain view on the porch and bore all the signs of being a marijuana blunt had created a reasonable suspicion to stop the defendant. Once the defendant tried to unlock the door to the house to go inside, the Officers were permitted to stop him. Upon stopping him and immediately feeling the firearm on the defendant's waist, coupled

12

with recovery of the blunt, the officers had probable cause to arrest the defendant. The narcotics were therefore recovered as a result of a search incident to arrest and the motion to suppress all physical evidence was denied.

Regarding the second issue for appeal, defendant moved for mistrial on February 11, 2015, based on the Commonwealth's allegedly prejudicial statements in its opening that day. The motion was denied. After sentencing, the defendant filed a post-sentence motion for a new trial on May 26, 2015 based on the same prejudicial statements. This Court held a hearing on June 17, 2015 regarding said motion and denied the motion that day.

The defendant's motion on February 11, 2015 proceeded as follows:

*N.T., 02-11-2015*

Page 50

**MR. GESSNER**: We had a brief sidebar after Ms. Rhodes' opening statement. It was my objection at sidebar. Your Honor gave the jury a second cautionary instruction, nevertheless it's my motion for a mistrial, based on Ms. Rhodes' opening statement. Her statement implied that my client was selling drugs that day. My client is not on trial for selling drugs that day. There's no evidence in this trial that's going to be admissible, that he actually sold any drugs that day. And the implication being that he was selling drugs that day, coupled with the fact that the Commonwealth is moving on a prior conviction for possession with intent to deliver.

Page 51

…

Given the way she has presented it,

13

would leave the jury into the inference that my client was a drug dealer that day, and that he in fact possessed a firearm. I assume the inference that the jury is being led to is that he had the firearm to protect his drug selling operation. That is prejudicial, given the fact that he's not charged with that, and given what their evidence is, for his prior conviction. It's an improper statement at the opening statement.

**THE COURT**: Ms. Rhodes.

**MS. RHODES**: Your Honor, I would just argue that the statement, as if to say is just argument, it's consistent with what Sergeant Linder testified to, that it was an aborted sale.[7]

---

[7] The relevant part of the Commonwealth's opening statement is as follows:

*N.T. Opening Statements, 02-11-2015*

Page 3

On June 10, 2008, Sergeant Linder and his partner, Officer Pratt, set up a narcotics surveillance, basically looking for narcotics sales, drug sales at Hobart and West Arch Street in the city and county of Philadelphia.

They set this up; they don't have a specific target, but they are watching and they see an older man start to go up to 5839 West Arch Street.

The defendant is sitting up on the porch -- standing on the porch. This person starts to go up the stairs. He's got money in his hand. A narcotic's car, a

Page 4

...

marked narcotics strike force police car starts to go by. The defendant looks, points, no, we are not making this drug sale here, as if to say. And then that person starts to walk back down Hobart Street.

Sergeant Linder is going to tell you, he, in his experience, believed that to be an aborted drug sale.

He keeps watching the defendant, and

14

At no time did I indicate that he did make a sale, if anything, I just highlighted that there was no sale, and so I would argue that it was not prejudicial. Again, it's argument and I think consistent with Your Honor having given two

Page 52

...

instructions at opening, that it's an opening statement and not evidence,[8] I think

---

the defendant starts rolling, what is commonly known as a blunt, a marijuana cigar. Opens up the cigar, dumps it out. Puts something in it, rolls it up. Sergeant Linder then radios back-up officers who are in the area to say, go stop this guy, something's going on, let's stop him. So Officer Bransfield goes up there, the defendant throws this blunt to the ground and he starts trying to get into his house; he's got a key, he starts trying to get in. Officer Bransfield just reaches for

Page 5

...

him just to stop, to stop him. He feels immediately what he knows to be a firearm. It turns out to be loaded. He's placed under arrest, they find more narcotics.

[8] This refers to the standard instruction that the Judge gave before the opening and a curative reiteration of those instructions that the Judge gave after the Commonwealth's opening and after conferring with both parties at sidebar. The second instruction was stated to the jury as follows:

*N.T. Opening Statements, 02-11-2015*

Page 8

...

THE COURT: Members of the jury, I told you just a few minutes ago, any statements made by counsel are not evidence. Any question that they ask is not evidence. The only evidence that you are to consider in this case, is the testimony that I permit the witnesses to testify to, from this witness stand, that's the only

15

would be sufficient not to warrant a mistrial.

**THE COURT**: First of all, an opening statement is argument, and closing argument is argument, just so we get that straight. The purpose of an opening statement as all attorneys know, is to outline for a jury what an attorney, either Commonwealth or defense or civil realm, plaintiff or defense counsel intends to prove at trial. It's not evidence, it's simply, this is what we believed the evidence will show. I believe commenting on what the Commonwealth believes the evidence will show, in light of the fact that Sergeant Linder had previously testified, so we knew what he was going to say, that he believe through his training and experience, both as a supervisor on the Narcotics Enforcement Team as well as the Narcotics Strike Force, that he believed he had observed an aborted hand-to-hand drug

Page 53

...

transaction. This is simply what Ms. Rhodes was commenting the evidence will show and the testimony will show. I think it's totally appropriate what she said, and your motion for a mistrial is denied.

**MR. GESSNER**: I understand. Okay. Just for the record, I did have to sort of alter my opening statement. I know that if we do ultimately get to the Superior Court on this and this does become an issue, that they might look to my opening statement, but I had to alter my opening statement, based on what Ms. Rhodes' statement was.

**THE COURT**: So you had to cover your

evidence you are to consider, in this case. So anything counsel says, whether they be questions or statements, are not evidence.

basis and you did what was appropriate, based upon what she appropriately said in her statement that she believes the Commonwealth's evidence would show.

**MR. GESSNER**: I understand. I just wanted to make sure...

**THE COURT**: You didn't waive it.

Page 53

...

**MR. GESSNER**: I didn't waive anything, that's exactly what I am trying to say.

**THE COURT**: I agree.

**MS. RHODES**: Thank you, Your Honor.

The Superior Court has ruled that "[a] motion for a mistrial is within the discretion of the trial court." *Com. v. Tejeda*, 2003 PA Super 378, ¶¶ 8, 834 A.2d 619, 623 (2003) (citations omitted). "[A] mistrial [upon motion of one of the parties] is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Id.* (citations omitted). "It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. *Id.* (citations omitted). "On appeal, [the Superior Court's] standard of review is whether the trial court abused that discretion." *Id.* (citations omitted).

The Superior Court characterizes, "[a]n abuse of discretion [as] more than an error in judgment." *Id.* at ¶ 9 (citations omitted). "On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.* (citations omitted).

Here, the Commonwealth's statements regarding Sergeant Linder's subsequent testimony about the aborted drug transaction was an appropriate summary of the evidence to be presented by the Commonwealth in its case-in-chief. An opening statement is argument, not evidence; and

17

the Judge informed the jury twice of that fact. Even though the defendant was only charged with possession of a firearm by a person prohibited, the aborted sale and the rolling of the marijuana blunt are eyewitness testimony based on Sergeant Linder's experience and observation. Even when these facts are coupled with the defendant's previous conviction for possession with intent to deliver, which was stipulated to and admitted to prove that he was a person prohibited from possessing a firearm, they do not rise to the level of depriving the defendant of an opportunity for a fair and impartial trial, especially because there was sufficient evidence regarding possession of a firearm on its own to sustain a guilty verdict for that offense.

The defendant subsequently made a post-trial motion for a new trial on the exact grounds as the motion for mistrial.

The standard for granting a new trial is similar to granting a mistrial and was characterized by the Superior Court in *Commonwealth v. Goodwine*, 692 A.2d 233 (Pa.Super.1997), as follows:

> "Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a **new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.** Moreover, it must be determined from all the circumstances whether a remark has a prejudicial effect; there is no fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial."

*Com. v. Goodwine*, 692 A.2d 233, 237-38 (Pa. Super. Ct. 1997) (citations omitted) (emphasis in original).

Just as with this Court's ruling in the motion for mistrial, the defendant was not deprived of a fair and impartial trial by what was said in the Commonwealth's opening statement. The Commonwealth's counsel couched her summary of Sergeant Linder's testimony in language that

18

implies that any drug activity on the part of the defendant is simply a conclusion of Sergeant Linder based on his experience and observations and not a definitive evidentiary fact. Thus, this Court's denial of the defendant's motion for a new trial was properly decided.

Therefore, for all of the foregoing reasons, this Court's denial of the defendant's motion to suppress, motion for a mistrial, and post-trial motion for a new trial were all properly denied and it is requested that its determinations on each issue be affirmed on appeal.

**BY THE COURT:**

_____ J.
ANGELO J. FOGLIETTA

Date:  October 8TH , 2015

19