J-S03006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMELL RASHAAD JACKSON | : | |
| | : | |
| Appellant | : | No. 373 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 7, 2020
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000599-2019

BEFORE:   DUBOW, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: MARCH 19, 2021**

Appellant, Jamell Rashaad Jackson, appeals from the January 7, 2020 Judgment of Sentence of 5 to 10 years' incarceration entered in the Erie County Court of Common Pleas following his jury conviction of Persons Not to Possess a Firearm, Possession of an Instrument of Crime ("PIC"), and Aggravated Assault with a Deadly Weapon, a second-degree felony.[1] Appellant challenges the weight of the evidence, the court's denial of his request for a mistrial, the legality of his sentence, and the court's refusal to instruct the jury on self-defense.  After careful review, we affirm.

The facts and procedural history are, briefly, as follows.  Appellant lived, on and off, with his uncle, Julius Jackson, and Mr. Jackson's Cane Corso dog,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6105(a)(1), 907(a), and 2702(a)(4), respectively.

in Mr. Jackson's home. On December 3, 2018, Appellant shot Mr. Jackson, in the foot with a firearm that Appellant had taken from Mr. Jackson's home.

While at the hospital just after the shooting, Mr. Jackson told Erie Police Officers Michael Attalla and Melanie Szoszorek that Appellant shot Mr. Jackson because of a dispute over unpaid rent. Mr. Jackson, appearing calm, coherent, and not heavily intoxicated, described the specific details of the event and gave a written statement consistent with his oral account. Mr. Jackson definitively identified Appellant as the shooter. Upon returning to Mr. Jackson's home later that same night, Officer Szoszorek recovered, consistent with Mr. Jackson's statement, a bloody shirt and a bloody sock with a bullet hole. Officer Szoszorek did not find a firearm at that time.

Detective Patrick Grinkel continued the investigation of the incident. He met with Mr. Jackson two days after the shooting at Mr. Jackson's home. Mr. Jackson gave Detective Grinkel a statement essentially identical to the written and oral statements he had given to Officers Attalla and Szoszorek two days earlier. When speaking with Detective Grinkel, Mr. Jackson was calm, coherent, and pleasant, and expressed no doubt that it was Appellant who shot him.

Mr. Jackson also gave Detective Grinkel a plastic bag containing Mr. Jackson's gun, which Mr. Jackson stated that he had found on the porch of his home sometime after the incident. A DNA sample collected from this firearm matched Appellant's DNA. Detective Grinkel discovered, under the stairs in Mr. Jackson's kitchen, a spent .9 mm bullet, later revealed to have come from

- 2 -

Mr. Jackson's firearm. Detective Ginkel's subsequent investigation revealed that Appellant did not have a license to possess a firearm.

On March 20, 2019, the Commonwealth charged Appellant with the above, and other related, offenses arising from the December 3, 2018 shooting.

In the days preceding Appellant's jury trial, the Commonwealth issued a subpoena compelling Mr. Jackson to appear at the District Attorney's Office. Mr. Jackson did not appear. Instead, on November 4, 2019, he and his sister visited Cheryl Kita, a notary, where Mr. Jackson signed a notarized statement that Appellant was not responsible for the shooting.

Appellant's trial commenced on November 7, 2019.[2] The Commonwealth presented the testimony of numerous witnesses, including Mr. Jackson, and established the above facts. Relevantly, and contrary to the statements he had given to police and investigators, at trial, Mr. Jackson testified that he was intoxicated at the time of the incident, that the incident was "a blur," and that he could not identify the person who shot him. N.T. Trial, 11/7/19, at 34, 37, 43-44. However, the Commonwealth did read aloud the written statement Mr. Jackson had given to police and Mr. Jackson confirmed that he and Appellant had gotten into an argument, which caused Mr. Jackson's dog to attempt to attack Appellant. *Id.* at 41-43. Appellant "was waiving [Mr. Jackson's] gun . . . and the gun went off and shot [Mr.

---

[2] The court severed the Persons Not to Possess a Firearm charge from the other charges for purposes of trial.

Jackson's] foot." *Id.* Mr. Jackson also testified that he did not give Appellant permission to have his firearm. *Id.* at 80-81.

Sandra Jones, Appellant's grandmother and Mr. Jackson's mother, testified on Appellant's behalf. Ms. Jones testified that Mr. Jackson is a recovering drug addict. N.T., 11/8/19, at 194. She further testified that she visited Mr. Jackson at the hospital immediately following the shooting. *Id.* at 191-92. She testified that, at that time, he seemed high and repeatedly demanded more pain medication. *Id.* at 194-95. Appellant did not testify on his own behalf.

At the start of the third day of testimony, Appellant requested that the court provide the jury with a self-defense instruction based on Mr. Jackson's testimony that his dog had attempted to attack Appellant. The trial court denied Appellant's request, explaining that Appellant's argument sounded in accident and not self-defense. N.T., 11/12/19, at 4-5 ("[Y]ou could argue that the dog was attacking [Appellant]. . . but I'm somewhat hesitant here, because [Appellant's] defending himself against the dog, he's not defending against the [victim]. And if he did that, then he accidentally shot Mr. Jackson. . . . So, I'm not seeing it as self-defense[.]").

The jury commenced its deliberations and returned with a series of questions. Relevant to this appeal, the jury asked the court to re-read the elements of Aggravated Assault with a Deadly Weapon. In response, the court stated to the jurors: "As you might know, Counsel that have been here [are] not here, but we have substitutes from the Public Defender's Office and from

the DA's Office." ***Id.*** at 99. The court then proceeded to read the jury the instruction. At the conclusion of the instruction, Patricia Kennedy from the Public Defender's Office asked for a sidebar at which she objected to the trial court's identifying her as a member of the Public Defender's Office and moved for a mistrial. ***Id.*** at 99-100. The trial court asked Attorney Kennedy if she wanted the court to "say anything to the jurors to correct any of this?" ***Id.*** at 100. Attorney Kennedy did not ask for a curative instruction and instead replied that she thought "it would be best to just let sleeping dogs lie." ***Id.*** at 101.

The jury convicted Appellant of PIC and Aggravated Assault with a Deadly Weapon.[3] The jury then considered the bifurcated Persons Not to Possess a Firearm charge. Based on testimony of the First Deputy Clerk of Courts that Appellant had pleaded guilty to First-Degree Burglary, 18 Pa.C.S. § 3502(a)(2), a felony, on January 5, 2016, the jury returned a verdict of guilty.

On January 7, 2020, the court sentenced Appellant to a term of five to ten years' incarceration for his Persons Not to Possess a Firearm conviction, followed by one year of probation for his PIC conviction. The court also imposed a concurrent term of two to nine years' incarceration for his Aggravated Assault with a Deadly Weapon conviction.

---

[3] The jury acquitted Appellant of the more serious charge of First-Degree Aggravated Assault, 18 Pa.C.S.§ 2702(a)(1), and Firearms Not to Be Carried Without a License, 18 Pa.C.S. § 6106(a)(1).

Appellant filed a timely post-sentence motion, which the trial court denied. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following four issues on appeal:

1. Did the trial court commit an abuse of discretion and/or error of law when it denied Appellant's motion for a new trial on weight of the evidence grounds?

2. Did the trial court commit an abuse of discretion and/or error of law when it denied Appellant's request for a self-defense instruction?

3. Did the trial court commit an abuse of discretion and/or error of law when it denied Appellant's request for a mistrial after the trial court referenced Appellant's representation by the public defender's office?

4. Did the trial court impose an illegal sentence when it graded Appellant's conviction for Persons Not to Possess as a first[-]degree felony, rather than as a second[-]degree felony, where it did not instruct the jury to determine whether the person possessed the weapon on his person or within his reach?

Appellant's Brief at 8 (emphasis and suggested answers omitted).

**Weight of the Evidence**

In his first issue, Appellant claims that the trial court erred in denying his Motion for a New Trial on the weight of the evidence grounds. *Id.* at 26-30. In particular, Appellant asserts that "in light of the faulty recollection of the complainant, the conditions in which he gave any statement, the failure of the police to test items, and the limitations of the DNA testing itself," the jury's verdict "resulted from surmise and conjecture." *Id.* at 29.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 n.3 (Pa. 2000).

Instantly, the jury credited the testimony of the Commonwealth's witnesses, both lay and expert, over that of Appellant and his witnesses. With respect to the inconsistency between Mr. Johnson's statements to police and investigators and his trial testimony, the jury resolved Mr. Johnson's contradictory testimony in the Commonwealth's favor, as it was entitled to do. Appellant essentially asks this Court to reassess the credibility of the Commonwealth's witnesses and Appellant's witness, and reweigh the

testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

**Jury Instruction**

In his second issue, Appellant claims the trial court erred in denying his request that the court provide the jury with a self-defense instruction. Appellant's Brief at 30-32. Appellant asserts that the court should have instructed the jury to consider his actions as self-defense because "Appellant remained in the clutches of Mr. Jackson's dog at the time that he fired the weapon" and Mr. Jackson's dog "constitute[d] a deadly weapon owned and controlled by Mr. Jackson." *Id.* at 32. In support of this claim, Appellant relies on authority from jurisdictions other than Pennsylvania, which have held that people can use dogs as a deadly or dangerous weapon. *Id.* at 31.

In reviewing a jury charge,

we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. We must view the charge as a whole; the trial court is free to use its own form of expression in creating the charge. A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Moreover, it is well-settled that the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties[,] and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.

*Commonwealth v. Williams*, 176 A.3d 298, 314 (Pa. Super. 2017) (internal citations and quotation marks omitted).

Defendants are generally entitled to jury instructions they request, so long as they are supported by the evidence. *Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014). "[T]he reason for this rule is that instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." *Id.* (citation and quotation marks omitted). A defendant cannot claim entitlement to an instruction that has no basis in the evidence presented during trial. *Id.*

Under the Crimes Code, self-defense falls under the defense of justification, which is a complete defense to criminal culpability. 18 Pa.C.S. § 502. Section 505, which governs self-defense, provides as follows:

> **(a) Use of force justifiable for protection of the person.**—
> The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself **against the use of unlawful force by such other person** on the present occasion.

18 Pa.C.S. § 505(a) (some emphasis added). A self-defense charge must be given upon request if there is evidence presented that the defendant acted in self-defense. *Commonwealth v. Gonzales*, 483 A.2d 902, 903 (Pa. Super. 1984).

Appellant argued at trial that he shot Mr. Johnson while attempting to defend himself from Mr. Johnson's dog. Importantly, however, Appellant did

not assert at trial that Mr. Johnson was attempting to use his dog to hurt Appellant or that Mr. Johnson's dog constituted a dangerous or deadly weapon. In other words, Appellant did not argue that Mr. Johnson employed his dog as a deadly weapon. Since the self-defense statute is clear that, in order to be acting in self-defense, the defendant must have used force for the "purpose of protecting himself against the use of unlawful force by such other person[,]" and the evidence did not establish that Mr. Johnson was using the dog unlawfully to injure Appellant, the evidence did not support a jury instruction based on self-defense.

Additionally, Appellant presented no other evidence that Mr. Johnson attempted to use any other type of unlawful force against Appellant. Thus, the trial court properly rejected Appellant's request for a self-defense jury instruction. Accordingly, Appellant is not entitled to relief on this claim.

**Legality of Sentence**

In his third issue, Appellant claims the trial court erred in not granting his Motion for a Mistrial after the court referred to Appellant's representation by the public defender. Appellant's Brief at 32-34. Appellant asserts that this reference prejudiced him because, following it, the jury convicted him of Aggravated Assault with a Deadly Weapon and Persons Not to Possess a Firearm. *Id.* at 34.

We review the court's denial of a motion for a mistrial for an abuse of discretion. *Commonwealth v. Tejada*, 834 A.2d 619, 623 (Pa. Super. 2003). A mistrial is only required where "an incident is of such a nature that

its unavoidable effect is to deprive the appellant of a fair and impartial trial." *Id.* (citation omitted). "[A] single reference to the defense attorney's status as a public defender does not rise to the level of prejudice [that] would entitle a defendant to a mistrial." *Commonwealth v. John*, 596 A.2d 834, 838 (Pa. Super. 1991). This is especially so where there is no evidence of record demonstrating that this reference prejudiced the defendant's ability to have a fair and impartial trial. *Id.*

Appellant's bald assertion that the jury convicted him of Aggravated Assault with a Deadly Weapon, a second-degree felony, and Person Not to Possess a Firearm because of the court's one-time passing reference to his counsel's status as a public defender overlooks the substantial evidence presented by the Commonwealth in support of those convictions. It also overlooks that the jury acquitted him of the more serious offense of Aggravated Assault in the first degree and of Firearms Not to Be Carried Without a License. This fact demonstrates that the jury based its determination of Appellant's guilt on the evidence presented and not on any bias against Appellant engendered by the court's reference to the Public Defender's Office. Because there is no actual evidence of record demonstrating that this reference prejudiced Appellant's ability to have a fair and impartial trial, the court's single reference to the defense attorney's status as a public defender does not rise to the level of prejudice that would entitle the defendant to a mistrial. Accordingly, the trial court did not abuse its discretion in denying Appellant's Motion for a Mistrial.

In his final issue, Appellant claims that the trial court imposed an illegal sentence when it graded his Persons Not to Possess a Firearm conviction as a first-degree felony because the court did not instruct the jury that it had to find that Appellant physically possessed a gun on his person, and the jury did not make that specific finding. Appellant's Brief at 37.

Issues pertaining to the legality of a sentence are questions of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Gentry**, 101 A.3d 813, 817 (Pa. Super. 2014). The proper grading of an offense pertains to the legality of the sentence. **Commonwealth v. Aikens**, 139 A.3d 244, 245 (Pa. Super. 2016).

Appellant does not dispute that his prior Burglary conviction rendered him a person not to possess a firearm. 18 Pa.C.S. § 6105(a)(1), (b). The offense of Persons Not to Possess a Firearm is generally graded as second-degree felony. **Id.** at 6105(a.1). However, if the person who was not to possess a firearm "was in physical possession or control" of the firearm "whether visible, concealed about [his] person[,] or within his reach[,]" then this offense is graded as a first-degree felony. **Id.** at § 6105(a.1)(1.1)(i)(B).

Here, the trial court instructed the jury on the offense of Persons Not to Possess a Firearm as a first-degree felony as follows:

> . . . To find the defendant guilty of this offense, you must find the following elements have been proven beyond a reasonable doubt[.] First, that the defendant was a person prohibited by law from possessing a firearm. . . .

The second element is that the defendant . . . possessed this particular firearm. He possessed, he used[,] or he controlled this particular firearm in this case.

As we stated before, for a person to possess a firearm, he must have the intent to control and power to control the firearm.

So, basically . . . you must find beyond a reasonable doubt that he **did possess this particular firearm**. And[,] as you know, you've heard evidence regarding whether or not he possessed that firearm.

It's entirely up to you to make a decision based on a clean slate from the evidence you've heard whether or not he possessed it in this particular case.

N.T. Trial, 11/12/19, at 113-14 (emphasis added). Accordingly, the record belies Appellant's claim that the trial court did not properly instruct the jury that, to convict Appellant of this offense, it must find that he possessed the gun on his person. Moreover, the jury had, just moments before, convicted Appellant of the offense of Aggravated Assault with a Deadly Weapon, finding that Appellant possessed with a criminal purpose, and used, a deadly weapon, namely a gun, to shoot Mr. Jackson. Because conviction of Aggravated Assault with a Deadly Weapon required actual possession of a gun, the trial court did not err in instructing the jury on the increased grading. Appellant is, therefore, not entitled to relief on this claim.

Judgment of Sentence affirmed.

Judge Murray joins the memorandum.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/19/2021